## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JANE DOE (A.M.G.), *an individual*,

    Plaintiff,

    v.

WYNDHAM HOTELS & RESORTS,
INC., *et al.*,

    Defendants.

Case No. 2:24-cv-204

## OPINION & ORDER

Plaintiff Jane Doe, a survivor of sex trafficking, sued hotel franchisee Tilma, Inc.; franchisors Wyndham Hotel Group, LLC; Wyndham Hotels & Resorts, Inc.; and Super 8 Worldwide, Inc. (collectively "Wyndham"); and franchisors Choice Hotels International, Inc. and Choice Hotels International Services Corp. (collectively "Choice") seeking damages after the plaintiff was trafficked at a hotel property associated with the defendants. Wyndham and Choice moved to dismiss the claims against them. For the reasons stated herein, both motions will be **DENIED**.[1]

## I. BACKGROUND

At this stage, the Court assumes that the facts alleged in the Complaint are true. The plaintiff is a survivor of sex trafficking. ECF No. 1 ¶ 10. She was trafficked from 2012 to 2014 at a hotel located at 100 Red Cedar Court in Chesapeake, Virginia

---

[1] The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

("Red Cedar Property"). *Id.* ¶¶ 36, 38. Defendant Tilma, Inc. "owned, operated, controlled and/or managed the Red Cedar [p]roperty." *Id.* ¶ 23. The Red Cedar Property, a hotel franchise location, "was a Super 8 hotel in 2012 when [the plaintiff's] trafficking began," and "[s]ometime thereafter during [the plaintiff's] trafficking period [] became a Quality Inn hotel." *Id.* ¶ 19.

When she interacted with hotel staff, the plaintiff had visible bruising on her body. ECF No. 1 ¶¶ 98a, 98k. The plaintiff's traffickers kept her under constant surveillance and were often present in common areas of the hotel. *Id.* ¶¶ 34, 98. There was an extremely high volume of traffic around the plaintiff's hotel room, consisting of men who were not hotel guests coming and going at unusual times and staying only briefly. *Id.* ¶ 98. The plaintiff's rooms were frequently paid for with cash or prepaid cards. *Id.* The plaintiff's trafficker would not allow housekeeping to enter the room for regular cleaning. *Id.* Hotel staff consistently put the plaintiff and other trafficking victims in the same hallway at the rear of the hotel near a door that was kept unlocked, allowing Johns to enter and exit freely. *Id.* The plaintiff attempted to escape from her trafficker while at the Red Cedar Property, but her trafficker caught her and dragged her back to her hotel room; and when this occurred, hotel staff heard the plaintiff screaming. *Id.*

Wyndham and Choice engaged with the Red Cedar Property in multiple ways. They monitored customer surveys and complaints, gathered and monitored detailed data about hotel guests, conducted regular hotel inspections, employed field agents, and received information from law enforcement. ECF No. 1 ¶¶ 95, 97. The defendant

franchisors also "retained day-to-day control over renting rooms," "controll[ed] all details of the guest reservation, check-in, and payment processes," "controll[ed] [] policies and procedures regarding check-in, payment, and identity verification procedures," and were able to "reserv[e] rooms and accept payments without requiring franchisee approval or involvement." *Id.* ¶ 113.

The plaintiff filed the Complaint on March 27, 2024. ECF No. 1. Wyndham and Choice moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 32 (Wyndham), 46 (Choice). With its motion to dismiss, Choice moved to strike parts of the Complaint as immaterial. ECF No. 46.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 545. When considering a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

B.     **Civil Liability Under the Trafficking Victims Protection Reauthorization Act (TVPRA)**

18 U.S.C. § 1595 sets forth the standard for civil liability under the TVPRA and provides the basis for the plaintiff's claims. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Therefore, to state a claim for beneficiary liability under the TVPRA, a complaint must plausibly allege that the defendant "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the [defendant] knew or should have known that the venture violated the TVPRA as to the [plaintiff]." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021); 18 U.S.C. § 1595(a).

Violations of the TVPRA are defined in 18 U.S.C. § 1591, which provides criminal penalties for:

> (a) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

4

> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

## III.    ANALYSIS

### A.    Statute of Limitations

Section 1595(c)(1) imposes a ten-year statute of limitations for beneficiary liability causes of action arising from violations of Section 1595(a). 18 U.S.C. § 1595(c)(1). Wyndham contends that the claims against it are time-barred because the Red Cedar Property was no longer a Super 8 franchise hotel as of November 22, 2012, and the plaintiff filed this suit on March 27, 2024—"more than 12 years after her alleged trafficking occurred at the Super 8®-branded hotel."[2]  ECF No. 33 at 6,

---

[2] Wyndham relies upon extrinsic evidence—a copy of the franchise termination letter—to make their argument. *See* ECF No. 33-1 at 26; ECF No. 33 at 23. "[A] court may consider [extrinsic evidence attached to a motion to dismiss] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, the letter reflecting the termination of the Super 8 franchise—the extrinsic evidence at issue—is integral to the Complaint and is relied upon to state its claims. The Complaint states that "[b]etween 2012 and 2014, [the plaintiff] was trafficked at the Super 8 and subsequently Quality Inn." ECF No. 1 ¶ 36. The Complaint further states that the Red Cedar Property "was a Super 8 hotel in 2012 when [the plaintiff's] trafficking began. Sometime thereafter during [the plaintiff's] trafficking period it became a Quality Inn hotel." *Id.* ¶ 19. These

23–24. Choice similarly contends that all allegations against it that occurred before March 27, 2014, are barred by the statute of limitations. ECF No. 47 at 25–26.

The plaintiff argues that the factual circumstances underlying this case implicate the doctrine of equitable tolling. ECF No. 37 at 28; ECF No. 48 at 29–30. Equitable tolling is "a discretionary doctrine that turns on the facts and circumstances of a particular case." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quotation marks omitted). For equitable tolling to apply, a litigant must establish "(1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quotation marks omitted). Equitable tolling "must be reserved for those rare instances where— due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party[,] and gross injustice would result." *Harris*, 209 F.3d at 330.

Though a court may reach the merits of an affirmative defense on a motion to dismiss when "all facts necessary to the affirmative defense clearly appear on the face of the complaint," *Goodman v. Praxair, Inv.,* 494 F.3d 458, 466 (4th Cir. 2007) (cleaned up), generally a plaintiff need not plead facts in their complaint to negate an affirmative defense. *Jones v. Bock*, 549 U.S. 199 (2007); *Goodman*, 494 F.3d at 466.

---

allegations incorporate the extrinsic evidence into the Complaint by reference because the plaintiff's claims against Choice necessarily rely on the pleaded fact that the Red Cedar Property, which was initially a Super 8 hotel, became a Quality Inn hotel. The plaintiff can state no claim against Choice if this fact is not true. Therefore, the Court may consider this extrinsic evidence in its 12(b)(6) analysis.

Making a reasonable inference in the plaintiff's favor, the Court construes the plaintiff's trafficking period to have begun at least on or about January 1, 2012, and to have ended no later than December 31, 2014. *See* ECF No. 47 at 25. The Complaint alleges that "[the plaintiff] remained under the continuous control of her traffickers through at least 2014." ECF No. 1 ¶ 38. "As a result," the Complaint states, "[the plaintiff] did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights." *Id.* ¶ 216. Because the plaintiff's trafficking lasted through the end of 2014, it is not clear from the face of the Complaint that equitable tolling does not apply in this case. *See Hongxia Wang v. Enlander*, No. 17-cv-4932, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018) ("At the pleading stage, [] dismissal of the § 1589 and § 1590 claims is not warranted because it is not clear from the face of the Complaint that equitable tolling does not apply."); *see generally Schneider v. OSG, LLC*, No. 22-cv-7686, 2024 WL 1308690, at *5 n.3 (E.D.N.Y. Mar. 27, 2024) (finding the plaintiff's claims timely on equitable tolling grounds where the plaintiff was under the hold of their trafficker); *Doe v. Hotels*, No. 6:23-cv-1012, 2024 WL 2955728, at *4 (M.D. Fla. June 12, 2024) (applying equitable tolling to deny motion to dismiss TVPRA claims). Accordingly, the Court declines to dismiss the Complaint, at this stage, on statute of limitations grounds.

**B.    Beneficiary Liability Under the TVPRA**

*i.    Knowing Benefit*

To satisfy the knowing benefit element of a civil TVPRA claim, a complaint may allege facts to show that a defendant benefitted "financially or by receiving anything of value." 18 U.S.C. § 1595(a). District courts have held that renting rooms to a trafficker constitutes a "financial benefit from a relationship with the trafficker" sufficient to satisfy the knowing benefit element, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019),[3] and this Court agrees. The Complaint alleges that both Wyndham and Choice "directly rented rooms at the hotels" to and "directly received payment" from traffickers. *Id.* ¶¶ 114, 129. Therefore, the Court reasonably infers that, because the defendants obtained money from the plaintiff's traffickers, both defendants received a "financial benefit from a relationship with the trafficker[s]." *M.A.*, 425 F. Supp. 3d at 965.

*ii.    Participation in a Venture*

*a.    Venture*

Section 1591(e)(6) defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," § 1591(e)(6). Courts have declined

---

[3] *See also, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020); *H.H. v. G6 Hosp.*, LLC, No. 2:19-cv-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *A.B. v Marriott*, 455 F. Supp. 3d at 188–91; *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-cv-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-656, 2020 WL 4368214, *4 (N.D. Cal. July 30, 2020).

to incorporate Section 1591(e)'s definition of "participation in a venture" into Section 1595 for good reason.

> If we replace "participation in a venture" with Section 1591(e)(4)'s "knowingly assisting, supporting, or facilitating a violation of sub-section (a)(1)," we get a nonsense sentence: benefited "from [knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)] which that person knew or should have known has engaged in an act in violation of this chapter." In other words, the franchisors' formulation requires a plaintiff to prove that the defendant knowingly facilitated a violation, making the "should have known" language superfluous.

*Doe #1*, 21 F.4th at 724 (11th Cir. 2021); *see M.A.,* 425 F. Supp. at 969 (declining to read Section 1591(e)(4)'s definition of "participation in a venture" into Section 1595); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotation marks omitted)). But, here, the Court does find it appropriate to incorporate Section 1591's definition of "venture" into Section 1595.[4]

The Complaint alleges that the plaintiff "had multiple traffickers in the years she was trafficked," ECF No. 1 ¶ 27, that the plaintiff "was always in the presence of and being monitored by her trafficker or an enforcer who her trafficker designated to monitor her," *id.* ¶ 98a, and that rooms at the Red Cedar Property were booked for

---

[4] To substitute the definition of "venture" in Section 1591(e)(6) would create a coherent sentence that does not contradict the text of Section 1595: benefited "from participation in [any group of two or more individuals associated in fact, whether or not a legal entity] which that person knew or should have known has engaged in an act in violation of this chapter." *See* 18 U.S.C. §§ 1591(e)(6) and 1595(a).

"[the plaintiff's] trafficker and his enforcers[,]" *id.* ¶ 98c. These facts support the reasonable inference that the plaintiff's traffickers—at least two individuals—were associated with each other for the purpose of trafficking the plaintiff. Thus, the Complaint sufficiently alleges facts to plead the existence of a venture.

### b.    *Participation*

"Participation in a venture" requires "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," 18 U.S.C. § 1591(e)(4). "In order to plead [the defendants] participated in [the alleged] venture, [the plaintiff] must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker." *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-648, 2023 WL 5510267, at *4 (M.D. Fla. Aug. 25, 2023) (quotation marks omitted). The plaintiff is not required to allege "the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her [Section] 1595 claim." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020). "To survive a motion to dismiss, all that is necessary is for a plaintiff to allege [] a 'continuous business relationship,' which gives rise to an inference, drawn in the plaintiff's favor, that the [] defendant facilitated the venture's success." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023).

The Complaint alleges that the defendants "participat[ed] in a venture, in the form of a continuous business relationship" with the plaintiff's traffickers, ECF No. 1 ¶ 143, and "participated in the venture by [continuing to rent] rooms to [the plaintiff's] traffickers," *id.* ¶ 148. By continually renting rooms to the plaintiff's

traffickers, the defendants participated in the traffickers' venture. And because it is reasonably inferred that the success of the traffickers' venture relied upon the defendants to provide them rooms, the existence of the continuous business relationship between the defendants and the plaintiff's traffickers gives rise to the inference that the defendants "facilitated the venture's success." *G.G.*, 76 F.4th at 560. Therefore, the Complaint alleges sufficient facts to satisfy this element of Section 1595.

### iii.    The Venture Violated the TVPRA

A Complaint must "plead sufficient facts to plausibly allege that the venture in which the [defendant] franchisors participated committed [a crime enumerated in the TVPRA] against [the plaintiff]." *Doe #1*, 21 F.4th at 725. The plaintiff's Section 1595 beneficiary liability claim is premised upon the predicate act of a violation of Section 1591(a).[5] ECF No. 1 ¶¶ 10, 155, 156, 171, 172. Section 1591(a) makes it a crime to knowingly harbor or solicit a person, "knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The Complaint alleges that "[the plaintiff's] traffickers controlled her through physical

---

[5] Section 1591(a) applies to conduct "in or affecting interstate . . . commerce." 18 U.S.C. § 1591(a). There is no dispute that the interstate commerce requirement is satisfied, but the Complaint nevertheless pleads sufficient facts to satisfy the requirement. *See* ECF No. 1 ¶ 29 (alleging that "[the plaintiff's] traffickers posted advertisements of her for commercial sex services online without her consent"); *id.* ¶ 98b ("[t]he rooms where the plaintiff was trafficked were frequently paid for with . . . prepaid cards"). On this basis, the Court can reasonably infer that the advertisements posted and the payments the plaintiff's traffickers made were "in or affecting interstate commerce." 18 U.S.C. § 1591(a)(1).

violence and force and made her engage in commercial sex acts for their financial benefit." ECF No. 1 ¶ 28. The plaintiff's traffickers "beat her regularly and left visible bruises on her body," *id.*, "caused [the plaintiff] to believe she would face serious harm or physical restraint if she did not comply with their ongoing demand that she engage in commercial sex for their financial benefit," *id.* ¶ 30, "threatened to shoot her mom," *id.* ¶ 32, and "implied that if she did not do what her traffickers wanted, they would hurt her family," *id.* Taking the facts in the Complaint as true, the plaintiff sufficiently alleges a predicate act of sex trafficking.

### iv. *Knowledge*

#### a. *Franchisee's Knowledge*

##### 1. *Actual Knowledge*

"A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it knew or should have known that the venture was engaged in sex trafficking." *M.A.*, 425 F. Supp. 3d at 965 (quotation marks omitted). Here, the Complaint alleges facts to show that the defendants had actual knowledge of the plaintiff's sex trafficking at the Red Cedar Property. The Complaint alleges that both defendants "continu[ally] rent[ed] rooms" to the plaintiff's traffickers and that hotel staff "put all of the trafficking victims" in rooms "in a designated area of the property [] at the end of a back hallway but next to a door that was kept unlocked, thus [] allowing ease of access for '[J]ohns.'" ECF No. 1 ¶¶ 98f, 148. These facts support an inference that hotel staff—and, thus,

the defendant franchisors[6]—had actual knowledge that the rooms rented to the plaintiff and her traffickers were purchased for the purpose of sex trafficking in violation of the TVPRA as to the plaintiff.

2.    *Constructive Knowledge*

Even if the Court could not infer that the defendants had actual knowledge of the plaintiff's trafficking, the Complaint pleads sufficient facts to show that the defendants had constructive knowledge that the venture in which they participated was engaged in sex trafficking. When determining whether a defendant had constructive knowledge of sex trafficking, courts generally adopt a negligence standard. *See, e.g.*, *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 9550005, at *5 (E.D. Va. Sept. 21, 2020); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 472 (E.D.N.C. 2024); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-4933, 2022 WL 17363234, at *9 (S.D. Ohio Dec. 1, 2022); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-cv-5939, 2023 WL 5951390, at *5 (W.D. Wash. Sept. 13, 2023); *M.A.*, 425 F. Supp. 3d at 965; *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1076 (D. Colo. 2021); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). To impute constructive knowledge to a defendant, a court must find that the defendant "should have known" about the alleged sex trafficking, not that the defendant "might have

---

[6] As explained *infra* Part III.B.v, knowledge is imputed from the franchisee to Wyndham and Choice through vicarious liability.

been able to guess about sex trafficking." *Doe (L.M.)*, 717 F. Supp. 3d at 472; *see also E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021).

The Complaint must plead facts that plausibly support "an inference of trafficking by force or fraud." *Doe (L.M.)*, 717 F. Supp. 3d at 472. Thus, the Complaint must do more than plead facts to make it plausible that the plaintiff was engaging in commercial sex. *See id.* District courts have taken a wide variety of approaches to determining which facts are sufficient to support an inference of trafficking by force or fraud. But, generally, "[i]n cases where courts found a plaintiff to have adequately stated a TVPRA beneficiary claim as against a hotel, the plaintiff typically alleges that they exhibited some external indicator of physical distress that would have been obvious to hotel staff had they not been negligent or that traffickers previously trafficked victims at the same hotel." *A.B. v. Extended Stay*, 2023 WL 5951390, at *6 (emphasis added) (citing *A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-4934, 2022 WL 17741050, at *7 (S.D. Ohio Dec. 16, 2022) (finding TVPRA claim adequately pleaded where the plaintiff alleged "signs of physical abuse and weight loss"); *T.P.*, 2022 WL 17363234, at *8 (finding TVPRA claim adequately pleaded where the plaintiff exhibited "signs of physical abuse" and "her trafficker openly beat her in the parking lot of the hotel"); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1239 (N.D. Ga. 2022) (finding TVPRA claim adequately pleaded where the plaintiff was a minor who had numerous adult men visit her room, exhibited clear signs of external distress, and where "sex traffickers had previously trafficked victims at the" hotel).

The Complaint alleges that the plaintiff's traffickers "beat her regularly and left visible bruises on her body." ECF No. 1 ¶ 28. When the plaintiff checked in at various times, "hotel staff observed her and saw that she was emotional, nervous, scared, and often bruised." *Id.* ¶ 98a. At these times, the plaintiff "was dressed provocatively and had little to no baggage." *Id.*; *S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1083 (M.D. Fla. 2021) (finding TVPRA claim adequately pleaded where "[the plaintiff] displayed clear signs of physical abuse, diminished personal hygiene, submissiveness[,] and inappropriate attire"). Further, because the plaintiff "was always in the presence of . . . her trafficker or an enforcer who her trafficker designated to monitor her," ECF No. 1 ¶ 98a, the Court can infer that hotel staff observed the plaintiff in the presence of her traffickers. These facts lead to a reasonable inference that hotel staff observed clear "external indicator[s] of physical distress that would have been obvious to hotel staff had they not been negligent." *A.B. v. Extended Stay*, 2023 WL 5951390, at *6.[7] Thus, the Complaint pleads sufficient facts to support an inference that hotel staff had constructive knowledge that the rooms rented to the plaintiff and her traffickers were purchased for the purpose of sex trafficking in violation of the TVPRA as to the plaintiff.

---

[7] The Complaint also alleges that while at the Red Cedar Property, the plaintiff "tried to escape but her trafficker caught her, dragged her back to the hotel room and beat her[, and] [e]veryone nearby, including hotel staff, heard [the plaintiff] screaming." ECF No. 1 ¶ 98p. These allegations would meet the standard to plead constructive knowledge, but because the Complaint only alleges this type of encounter happened one time—and it does not specify whether the Red Cedar Property was a Wyndham franchise or a Choice franchise at the time—the Court cannot rely on this to find the Complaint adequate as to either defendant.

### v.    *Knowledge Imputed to Franchisors*

For Wyndham and Choice to be liable under Section 1595, knowledge or constructive knowledge of the plaintiff's sex trafficking must be imputed to them from the franchisee employees. "A civil liability claim under [Section] 1595 is essentially a tort action." *A.D. v. Wyndham*, 2020 WL 9550005, at *3 (citing *Meyer v. Holley*, 537 U.S. 280, 828 (2003)). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer*, 537 U.S. at 828. Thus, the plaintiff may bring a Section 1595 claim under a theory of vicarious liability. *A.D*, 2020 WL 9550005, at *6.

"[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." *A.D. v. Wyndham*, 2020 WL 9550005, at *3 (quoting *J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. Jun. 5, 2020)); *see also, e.g.*, *A.B. v. Hilton*, 484 F. Supp. 3d at 939; *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-619, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021); *J.L.*, 521 F. Supp. 3d at 1064 (all applying federal common law).[8] Therefore, the Court will apply the principles of federal common law. *See Krakauer*

---

[8] Wyndham contends that Section 1595(a) "is not silent on secondary liability," because it "specifically sets forth the requirements for civil liability against non-perpetrators." ECF No. 33 at 20. But the TVPRA *is* silent on secondary liability. *J.C. v. Choice Hotels Int'l*, 2020 WL 3035794, at *1. "[B]eneficiary liability is not third-party liability . . . . Rather, it is another form of direct liability." *A.D. v. Wyndham*, 2020 WL 9550005, at *3. The TVPRA does not address the separate question of "whether a third party—such as an employer or parent company—can be held indirectly liability for the beneficiary's tortious conduct." *Id.*

16

*v. Dish Network, LLC*, 925 F.3d 643, 659 (4th Cir. 2019) ("[W]e may . . . assume that federal statutes are written with familiar common law agency principles in mind.").

> Federal courts look to the Restatement of Agency to determine whether agency liability exists. *Hodgin v. UTC Fire & Sec. Am. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Under the Restatement of Agency, "an agency relationship exists when a principal 'manifests assent' to an agent 'that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Krakauer*, 925 F.3d at 659–60 (quoting Restatement (Third) of Agency, § 1.01). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals vicariously liable for acts of their agents in the scope of their authority.'" *Id.* at 660 (quoting *Meyer*, 537 U.S. at 285–86).

*A.D. v. Wyndham*, 2020 WL 9550005, at *3.

"Generally, the existence and scope of agency relationships are factual matters, and are therefore often appropriately left to the jury." *Krakauer*, 925 F.3d at 660 (quotations omitted). In the motion to dismiss posture, the Court must determine "not whether an agency relationship exists, but whether [the plaintiff] has alleged facts in the Complaint that if true would make a jury finding of an agency relationship plausible." *A.D. v. Wyndham*, 2020 WL 9550005, at *3. A complaint may plead an agency relationship between a franchisor and franchisee by alleging that the franchisor "had a high degree of control over the daily operations of [the franchisee hotel]." *Id.* at *4. In other words, a complaint must "allege[] more than an ordinary franchise relationship." *Id.* Factual allegations that show a franchisor's control of a franchisee's reservation systems, brand loyalty programs, websites, employment policies and procedures, and brand quality standards are sufficient to establish a

17

plausible agency relationship. *See, e.g., T.P.*, 2022 WL 17363234, at *12; *A.B. v. Hilton*, 484 F. Supp. 3d at 940.

The Complaint alleges that Wyndham "retained day-to-day control over renting rooms," "control[ed] all details of the guest reservation, check-in, and payment processes," "control[ed] [] policies and procedures regarding check-in, payment, and identity verification procedures," and was able to "reserv[e] rooms and accept payments without requiring franchisee approval or involvement." ECF No. 1 ¶ 113. These allegations are sufficient to allege an agency relationship between Wyndham and Tilma.

The Complaint also pleads similar facts to establish a plausible agency relationship between Choice and the franchisee. The Complaint alleges that Choice "controlled all details of the guest reservation, check-in, and payment processes," "directly took reservations for rooms at the Red Cedar Property and accepted payment for those rooms," "controlled the specific process used to register a walk-in guest and generate a reservation for that guest," "set or otherwise controlled room prices, required discounts, and reward programs," and "controlled the room rates offered to each guest." ECF No. 1 ¶ 125. Thus, the Complaint alleges sufficient facts to allege an agency relationship between Choice and Tilma.

Contrary to the defendants' arguments, the Complaint does more than merely plead facts to show that Wyndham and Choice exercised control over the Red Cedar Property by maintaining their brand or standards. *See* ECF No. 41 at 10; ECF No. 47 at 24–25. For the reasons expressed above, the Complaint pleads facts to make it

plausible that Wyndham and Choice exerted sufficient control over the *daily operations* of the Red Cedar Property to establish an agency relationship. Because the Complaint adequately pleads plausible agency relationships between the people who had actual or constructive knowledge of the plaintiff's trafficking, the franchisee that employed them, and Wyndham and Choice as the franchisors, the Court will also consider whether that knowledge can be imputed to both Wyndham and Choice.

It is true that the Complaint does not provide specific dates associated with the allegations that give rise to actual or constructive knowledge on behalf of the franchisee. Thus, the Court has considered whether that knowledge can be imputed to *both* Wyndham and Choice given the Complaint's failure to provide those dates. But the Complaint does allege that the plaintiff's traffickers engaged in a procedure during stays at the property that was "repetitive and routine." ECF No. 1 ¶ 86. At this stage of the litigation, the Court can infer that the Complaint's allegations occurred repeatedly throughout the time the plaintiff was trafficked, spanning both the Wyndham and the Choice periods. *See A.B. v. Marriott*, 455 F. Supp. 3d at 194 (finding TVPRA adequately pleaded where the plaintiff "plead[ed] return visits with similar characteristics"). Therefore, the Complaint alleges sufficient facts to establish, at a minimum, constructive knowledge on the part of Wyndham and Choice.

### C.    Vicarious Liability

The Complaint alleges a "Vicarious Liability for TVPRA Violations" claim against the "Franchisor Defendants" in Count III. ECF No. 1 ¶¶ 206–211. But

"[v]icarious liability is not an independent cause of action." *Myers v. City of Charleston*, No. 2:19-cv-757, 2020 WL 4195005, at *15 (S.D. W. Va. July 21, 2020). "[I]t is . . . a theory of liability[,] but it cannot stand on its own." *Id.* (collecting cases). The Court will allow the vicarious liability theory to proceed under Count II but Count III of the Complaint will be **DISMISSED**.

### D.    Shotgun Pleading

The defendants argue that the Complaint should be dismissed because it is an impermissible "shotgun pleading." ECF No. 33 at 24; ECF No. 47 at 26. The Court disagrees. A "shotgun pleading" is a complaint that fails to comply with Federal Rule of Civil Procedure 8(a)(2). *Bartol v. Barrowclough*, 251 F.Supp.3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). There are four categories of shotgun pleadings: "(1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does 'not separat[e] into a different count each cause of action or claim for relief'; and (4) a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Id.* (quoting *Weiland*, 792 F.3d at 1321–23) (alterations in original). "The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another, and in one way or

another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id.* (quoting *Weiland*, 792 F.3d at 1323).

Here, the plaintiff's claims against Wyndham and Choice "have essentially the same factual underpinning." *J.L.*, 521 F. Supp. 3d at 1075. The Complaint alleges that the plaintiff's traffickers engaged in a repeated and routine course of sex trafficking conduct at the Red Cedar Property from 2012 to 2014, ECF No. 1 ¶ 86, and that both Wyndham and Choice "owned, operated, controlled, and/or managed" the Red Cedar Property during the alleged trafficking period. *Id.* ¶¶ 19–21. Because the Complaint adequately alleges facts that detail the traffickers' routine conduct and the routine actions of the hotel staff throughout the trafficking period, the Court finds that the plaintiff's allegations provide each of the defendants "fair notice of the claims and the grounds that [the] plaintiff's claims against [them] rest on." *J.L.*, 521 F. Supp. 3d at 1075. Accordingly, the Court declines to dismiss the Complaint on the grounds that it fails to abide by Fed. R. Civ. P. 8(a)(2) as an impermissible "shotgun" pleading.

### E.    Defendant Choice's Motion to Strike

Choice argues that the plaintiff makes "irrelevant" "allegations regarding the hospitality industry as a whole and references unrelated events of general criminal activity from scattered times and places as purported evidence of Choice's constructive knowledge." ECF No. 47 at 26 (citing ECF No. 1 ¶¶ 39–53, 63, 66, 74, 77). But:

> Allegations that provide background information are particularly helpful, and therefore less susceptible to requests to strike, where [. . .] they seek to illuminate a clandestine topic, such as an illegal industry intentionally

21

obscured by its orchestrators. As the allegations of [the plaintiff's] complaint note, the modern sex trafficking industry is well-established, far-reaching, and hugely profitable. Because it operates in the shadows, the ways in which the sex trafficking industry functions in modern society are not generally well known. [The plaintiff's] allegations provide information that may better equip the court [to] resolve her claims by aiding in the court's understanding of the industry from which they arise. While the background information [the plaintiff] includes in her complaint may be more comprehensive than that strictly necessary to understand her claims, the court cannot say that the allegations have no possible relation to the controversy.

*Doe v. Natraj Enterprises, Inc.*, No. 2:21-cv-1565, 2021 WL 3190386, at *3 (D.S.C. July 28, 2021) (quotation marks and citations omitted).

Here, the Complaint "provides a synopsis of the sex trafficking industry, including statistics reflective of its prevalence in modern society, common methods used by traffickers, and telltale indicators of trafficking activity." *Doe v. Natraj*, 2021 WL 3190386, at *2. The Court does not find that the portions of the Complaint that the motion seeks to strike "have no possible relation to the controversy." *Graff v. Prime Retail, Inc.,* 172 F. Supp. 2d 721, 731 (D. Md. 2001). Accordingly, the motion to strike will be **DENIED**.

## IV.    CONCLUSION

The Motion to Dismiss filed by Defendants Wyndham Hotel Group, LLC; Wyndham Hotels & Resorts, Inc.; and Super 8 Worldwide, Inc. (ECF No. 32) is **DENIED.**

The Motion to Dismiss and Partial Motion to Strike filed by Choice Hotels International, Inc. and Choice Hotels International Services Corp. (ECF No. 46) is likewise **DENIED**.

Count III of the Complaint is **DISMISSED** as an independent cause of action.

Wyndham and Choice are **DIRECTED** to file answers to the Complaint consistent with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

_____ /s/ _____

Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 6, 2025